J Christopher Jorgensen, Esq.
Nevada Bar No. 5382
**LEWIS ROCA ROTHGERBER CHRISTIE LLP**
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
Tel: (702) 949-8200
Fax: (702) 949-8398
cjorgensen@lewisroca.com

Jack F. Altura, Esq. (*Pro Hac Vice forthcoming*)
WOMBLE BOND DICKINSON (US) LLP
400 Spectrum Center Drive, Suite 1700
Irvine, California 92618
Tel: (714) 557-3800
Email: jack.altura@wbd-us.com

*Attorneys for Plaintiff, Sentinel Holdings Ltd, f/k/a James Maritime Holdings, Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SENTINEL HOLDINGS LTD, F/K/A JAMES MARITIME HOLDINGS, INC., a Nevada Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MERCYFALLS & CN FL Corp a Florida Corporation,<br><br>Defendant. | Case No.<br><br>**COMPLAINT** |

Plaintiff Sentinel Holdings LTD, formerly known as James Maritime Holdings, Inc. (“Plaintiff” or “Sentinel”) alleges as follows:

**INTRODUCTION**

1. Sentinel brings this action to rescind a consulting agreement (“Consulting Agreement”) it entered into with Defendant Mercyfalls & CN FL Corp (“Defendant”) whereby Defendant agreed to identify companies to Sentinel for potential acquisition. A true and correct copy of the Consulting Agreement is attached as **Exhibit A**.



3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
LEWIS ROCA

2. At the root of Defendant's contractual duties was a non-circumvention clause, which expressly prohibited Defendant, without Sentinel's prior express written consent, from soliciting or entering into any side transaction with a company Defendant introduced to Sentinel.

3. In dereliction of this express duty, Defendant engaged in circumvention and self-dealing by signing a secret side contract with a target company, without Sentinel's knowledge or consent, and receiving more than $200,000 in undisclosed illegal financial advisory and brokers fees for which it lacked a State or Federal license to provide.

4. Defendant's circumvention and self-dealing fraudulently induced the Plaintiff, and the illegal broker fees exacerbated the target company's poor financial condition, which prevented Sentinel from receiving the full benefit of its acquisition of the company.

5. Therefore, Sentinel seeks an order for equitable rescission so that Sentinel may be restored to its position prior to contracting with Defendant. In the alternative, Sentinel seeks damages for Breach of Contract, Misrepresentation, Breach of Fiduciary Duty, and Bad Faith.

## PARTIES

6. Plaintiff Sentinel Holdings LTD is a Nevada corporation with its principal address at 123 West NYE Lane, Suite 129, Carson City, Nevada 89706.

7. Defendant Mercyfalls & CN FL Corp is a Florida corporation with its principal address at 10454 SW 54th Street, Cooper City, Florida 33328.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, and the matter is between citizens of different States.

9. Additionally, the claim for declaratory relief arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a).

10. Venue is proper in the District of Nevada pursuant to 28 U.S.C. § 1391(b)(1) because the Plaintiff is a Nevada corporation.

11. Additionally, this Court has personal jurisdiction over Mercyfalls pursuant to paragraph nine of the Consulting Agreement in which the Parties agreed to the personal jurisdiction



3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
LEWIS ROCA

LEWIS ROCA
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

of any court of general jurisdiction in Carson City, Nevada.

## ALLEGATIONS COMMON TO ALL COUNTS

12. On September 27, 2022, Sentinel and Defendant entered into the Consulting Agreement.

13. Under the Consulting Agreement, Defendant was required to use its reasonable best efforts to identify and introduce companies to Sentinel for potential acquisition by Sentinel.

14. Under the Consulting Agreement, the acquisition of a company by Sentinel identified by Defendant is a "Transaction."

15. Among the contractual duties Defendant agreed to is a non-circumvention clause, which expressly prohibits Defendant from entering into transactions with any party, including third-parties introduced by Defendant to Sentinel.

16. Specifically, section 14 of the Consulting Agreement provides as follows:

> 14. Non-Circumvention. The Consultant shall not, directly or indirectly, except with the prior express written consent of the Company: (a) enter into any transaction with any party introduced to the Company by the Consultant (the "Introduced Party") similar to, in competition with, or which otherwise could have the effect of preventing the Company from receiving the full benefit of, the transactions contemplated by this Agreement; (b) solicit the Introduced Party to enter into any such transaction; or (c) induce, solicit, procure, or otherwise encourage its Representatives or any third party, or respond to any solicitation from any of the same, to enter into any such transaction.

17. Under the Consulting Agreement, Defendant is the Consultant.

18. Defendant identified United Security Specialists, Inc. ("USS") as a potential target for acquisition and introduced USS to Sentinel for potential acquisition.

19. Therefore, USS became an "Introduced Party" under the Consulting Agreement.

20. Thereafter, Sentinel acquired USS.

21. Under the Consulting Agreement, Defendant acquiring USS is a "Transaction."

22. Pursuant to the section 1(e) of the Consulting Agreement, upon consummation of JMH's acquisition of USS, Sentinel issued 300,000 shares of Sentinel to Mercyfalls.

23. Unbeknownst to Sentinel, the entity "Mercy Falls, LLC" entered into a separate side

agreement, the Consulting Services Agreement ("CSA") with USS shortly after introducing USS to Sentinel. A true and correct copy of the CSA is attached as **Exhibit B**.

24. Defendant breached section 14 of its Consulting Agreement with Sentinel when it entered into the CSA with USS.

25. On information and belief, the entity Mercy Falls, LLC is the alter ego of Defendant.

26. On information and belief, neither Mercy Falls, LLC or the Defendant is licensed as a financial advisor or broker-dealer under any Federal or State law.

27. Defendant and Mercy Falls, LLC have, at all relevant times, shared common management and/or officers and, on information and belief, share common directors.

28. There is such a unity of interest between Defendant and Mercy Falls, LLC that one is inseparable from the other. Defendant and Mercy Falls LLC are so organized and controlled and their affairs are conducted in a manner that, in fact, renders each a mere instrumentality or adjunct of the other.

29. While the CSA identifies Mercy Falls, LLC as a Florida limited liability company, there is no "Mercy Falls, LLC" on the Florida Secretary of State's business search website.

30. Moreover, the individual signing the contract on behalf of Defendant and Mercy Falls, LLC has the same name.

31. Accordingly, on information and belief, Defendant and/or Defendant's owners, directors, or officers, attempted to create a fictitious entity—Mercy Falls, LLC—to execute a secret side contract with USS, when in reality Defendant and Mercy Falls, LLC are the same entity. Defendant and Mercy Falls, LLC are referred to as "Defendant" in this Complaint.

32. Defendant induced USS to enter into the CSA by representing it was properly licensed to provide the financial advisory and brokering services identified in the CSA, including to solicit and negotiate new financing for USS.

33. Sentinel did not consent to this side agreement between Defendant and USS, and they did not provide Defendant prior express written consent for Defendant to enter into the CSA with USS.

34. Defendant misrepresented its negotiations and agreements with USS to Sentinel.

LEWIS ROCA
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
LEWIS ROCA

35. Under the CSA, Defendant agreed to solicit and negotiate new financing for USS for which Defendant was to receive 3% of any financing amount obtained, including "receivable factoring, loans, and investments."

36. Sentinel did not authorize further payments to Defendant related to the transaction between Sentinel and USS, but nonetheless Defendant received a total of $201,728 in brokers fees from USS through the CSA.

37. Defendant's self-dealing when it made agreements with USS and receipt of money from USS breached Defendant's fiduciary duty to Sentinel.

38. In section 4 of the CSA, Defendant represents that it possesses any and all licenses which are required by state or federal law to perform the work contemplated by the CSA, including to solicit and negotiate new financing for USS, yet they hold no FINRA licenses for SEC registration to conduct such activities.

39. The services Defendant agreed to provide under the CSA require Defendant to have licensing under both State and Federal law.

40. Under California's Finance Lenders Law, "[n]o person shall engage in the business of a finance lender or broker without obtaining a license from the commissioner." Cal. Fin. Code § 22100.

41. Under California's Corporate Securities Law of 1968, "no broker-dealer shall effect any transaction in, or induce or attempt to induce the purchase or sale of, any security in this state unless the broker-dealer has first applied for and secured from the commissioner a certificate, then in effect, authorizing that person to act in that capacity." Cal. Corp. Code § 25210.

42. Because Defendant operates in Florida while USS operates in California, Defendant is subject to the licensure requirements under the Securities Exchange Act of 1934: "It shall be unlawful for any broker or dealer. . . to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security. . . unless such broker or dealer is registered in accordance with subsection (b) of this section." 15 U.S.C. § 78o.

43. Section 15(a)(1) of the Securities Exchange Act of 1934 (Exchange Act) prohibits

LEWIS ROCA
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

anyone from "effecting a transaction in securities" or "attempt to induce the purchase or sale of any security" unless they are registered as a broker or dealer under the Financial Industry Regulatory Authority, Inc.'s rules and regulations (FINRA).

44. Section 29(b) of the Exchange Act, holds that every contract executed in violation of any part of the broker-dealer registration requirements "must be void" as to the rights of persons who created or engaged in the performance of such contract. As a result, the underlying securities acquisition becomes a voidable transaction, allowing the investor a right of rescission and effectively awarding the investor or purchaser a put right.

45. Section 20(e) of the Exchange Act, allows the SEC to hold anybody who knowingly or carelessly offers substantial assistance in a violation of the Exchange Act liable for aiding and abetting.

46. See also https://www.sec.gov/about/divisions-offices/division-trading-markets/division-trading-markets-compliance-guides/guide-broker-dealer-registration[1]

---

[1] **A. Who is a "Broker"**

Section 3(a)(4)(A) of the Act generally defines a "broker" broadly as any person engaged in the business of effecting transactions in securities for the account of others. Sometimes you can easily determine if someone is a broker. For instance, a person who executes transactions for others on a securities exchange clearly is a broker. However, other situations are less clear. For example, each of the following individuals and businesses may need to register as a broker, depending on a number of factors:

- "finders," "business brokers," and other individuals or entities that engage in the following activities:
  - Finding investors or customers for, making referrals to, or splitting commissions with registered broker-dealers, investment companies (or mutual funds, including hedge funds) or other securities intermediaries;
  - Finding investment banking clients for registered broker-dealers;
  - Finding investors for "issuers" (entities issuing securities), even in a "consultant" capacity;
  - Engaging in, or finding investors for, venture capital or "angel" financings, including private placements;
  - Finding buyers and sellers of businesses (i.e., activities relating to mergers and acquisitions where securities are involved);
- investment advisers and financial consultants;
- foreign broker-dealers that cannot rely on Rule 15a-6 under the Act (discussed below);
- persons that operate or control electronic or other platforms to trade securities;
- persons that market real-estate investment interests, such as tenancy-in-common interests, that are securities;
- persons that act as "placement agents" for private placements of securities;

47. Contrary to its representations in section 5 of the CSA, Defendant holds no State or Federal licenses to provide the services required in the CSA.

48. Accordingly, this lawsuit is necessary to vindicate Sentinel's rights and seek equitable recission of the Consulting Agreement, including cancellation of the 300,000 shares of Sentinel that Sentinel provided Defendant pursuant to the Consulting Agreement.

**FIRST CAUSE OF ACTION**

**(Recission)**

**(Against Mercyfalls & CN FL Corp.)**

49. Sentinel realleges and incorporates by reference paragraphs 1 through 48 of this Complaint as if set forth in full.

50. Defendant materially breached section 14 of the Consulting Agreement by entering into the CSA with USS which has the effect of preventing Sentinel from receiving the full benefit of the acquisition of USS.

51. By entering into the CSA with USS for which Defendant lacked the authority, under

---

- persons that market or effect transactions in insurance products that are securities, such as variable annuities, or other investment products that are securities;
- persons that effect securities transactions for the account of others for a fee, even when those other people are friends or family members;
- persons that provide support services to registered broker-dealers; and
- persons that act as "independent contractors," but are not "associated persons" of a broker-dealer (for information on "associated persons," see below).

In order to determine whether any of these individuals (or any other person or business) is a broker, we look at the activities that the person or business actually performs. You can find analyses of various activities in the decisions of federal courts and our own no-action and interpretive letters. Here are some of the questions that you should ask to determine whether you are acting as a broker:

- Do you participate in important parts of a securities transaction, including solicitation, negotiation, or execution of the transaction?
- Does your compensation for participation in the transaction depend upon, or is it related to, the outcome or size of the transaction or deal? Do you receive trailing commissions, such as 12b-1 fees? Do you receive any other transaction-related compensation?
- Are you otherwise engaged in the business of effecting or facilitating securities transactions?
- Do you handle the securities or funds of others in connection with securities transactions?
- A "yes" answer to any of these questions indicates that you may need to register as a broker.



3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
LEWIS ROCA

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
LEWIS ROCA

the Consulting Agreement, to do and charging USS 3% of the amount of any financing amount Defendant obtained, and for which it lacked the appropriate licenses, Defendant prevented Sentinel from receiving the full benefit of Sentinel acquiring USS.

52. The unauthorized payments of $201,728 by USS to Defendant harmed the financial condition and operations of USS, thereby harming Sentinel's ownership interest in USS.

53. Therefore, Defendant's actions have prevented Sentinel from receiving the full benefit of the Transaction.

54. Defendant's breach defeats the very object of the Consulting Agreement, which was for Defendant to identify companies for Sentinel's potential acquisition and for Sentinel to receive the full benefit of the acquisition.

55. Defendant's breach is of such prime importance that had Sentinel known that Defendant would engage in self-dealing by inducing USS to enter the CSA through misrepresenting its licensure status, contracting with USS without Sentinel's prior express written consent, charging USS 3% of all financing obtained, and receiving unauthorized payments of $201,728 by USS, Defendant would have never entered into the Consulting Agreement.

56. Defendant's breach goes to the root of its obligations under the Consulting Agreement, because there is no point for Sentinel to contract with Defendant to identify targets for acquisition if Defendant goes behind Sentinel's back and damages the financial condition of the target, without Sentinel's knowledge or consent.

57. Accordingly, recission is proper under Nevada law.

**<u>SECOND CAUSE OF ACTION</u>**

**(Breach of Contract)**

**(Plead in the Alternative Against Mercyfalls & CN FL Corp.)**

58. Sentinel realleges and incorporates by reference paragraphs 1 through 57 of this Complaint as if set forth in full.

59. The Consulting Agreement entered into on September 27, 2022, between Sentinel and Defendant formed a valid, binding contract.

60. Sentinel performed all of its obligations under the terms of the contract.

61. Defendant failed to perform its obligations under the terms of the contract when Defendant entered into a separate agreement with USS, in violation of Section 14 of the Consulting Agreement.

62. As a proximate result of Defendant's actions, breaching section 14 of the Consulting Agreement, among other things, Sentinel has been damaged in an amount exceeding the jurisdictional limit and to be proven at trial.

63. Sentinel has been forced to retain counsel as a result of Defendant's wrongful conduct and is entitled to an award of its reasonable attorneys' fees and costs.

**<u>THIRD CAUSE OF ACTION</u>**

**(Misrepresentation)**

**(Plead in the alternative against Mercyfalls & CN FL Corp.)**

64. Sentinel realleges and incorporates by reference paragraphs 1 through 63 of this Complaint as if set forth in full.

65. Defendant has a pecuniary interest in the transactions described in this complaint, including the Consulting Agreement, the Consulting Services Agreement ("CSA") with USS, its representation that it was Florida limited liability company, and its efforts to hide or mislead its dealings with USS from Sentinel.

66. At the time Defendant made these representations, Sentinel did not know and could not have known that Defendant's representations were false and/or materially misleading, and Sentinel justifiably relied upon Defendant's misrepresentations.

67. As a result, Sentinel has been damaged in an amount exceeding the jurisdictional limit and to be proven at trial.

68. Sentinel has been forced to retain counsel as a result of Defendant's wrongful conduct, and is entitled to an award of its reasonable attorneys' fees and costs.

**<u>FOURTH CAUSE OF ACTION</u>**

**(Breach of Fiduciary Duty)**

**(Plead in the Alernative Against Mercyfalls & CN FL Corp.)**

69. Sentinel realleges and incorporates by reference paragraphs 1 through 68 of this

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
LEWIS ROCA

Complaint as if set forth in full.

70. A fiduciary relation exists between two entities when one of them is under a duty to act for or give advice for the benefit of another upon matters within the scope of the relation.

71. The Consulting Agreement between Sentinel and Defendant created a fiduciary duty by Defendant to Sentinel.

72. Defendant owed a fiduciary duty to Sentinel.

73. Defendant breached that duty when it created a separate relation with USS, including failing to inform Sentinel of the entirety of Defendant's relation with USS.

74. Sentinel sustained damages as a proximate cause of Defendant's breach in an amount exceeding the jurisdictional limit and to be proven at trial.

75. As a result, Sentinel has been forced to retain counsel as a result of Defendant's wrongful conduct, and is entitle to an award of its reasonable attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**

**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

**(Against Mercyfalls & CN FL Corp.)**

76. Sentinel realleges and incorporates by reference paragraphs 1 through 75 of this Complaint as if set forth in full.

77. Every contract imposes upon the contracting parties a duty of good faith and fair dealing.

78. A valid contract exists between Sentinel and Defendant.

79. Sentinel has performed all of its obligations under the contract.

80. Defendant owed a duty of good faith to Sentinel.

81. Defendant performed in a manner that was unfaithful to the purposes of the contract and deliberately contravened the intention and spirit of the parties' agreement when it violated section 14 of the agreement, among other things, and entered into a separate agreement with USS, and received compensation from USS.

82. Sentinel's justified expectations were denied.

83. As a proximate result of Defendant's breaches of the implied covenant of good faith

LEWIS ROCA
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

LEWIS ROCA
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

and fair dealing inherent in the contract between Sentinel and Defendant, Sentinel has been damaged in an amount exceeding the jurisdictional limit and to be proven at trial.

84. Sentinel has been forced to retain counsel as a result of Defendant's wrongful conduct, and is entitled to an award of its reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Sentinel, expressly reserving the right to amend this Complaint as necessary, prays for the following relief:

1. For an order declaring and adjudging the Consulting Agreement rescinded.
2. For an order commanding Defendant to return to JMH all 300,000 shares of JMH that JMH provided Defendant pursuant to the Consulting Agreement.
3. For General Damages in excess of $75,000, against Defendant;
4. For an order declaring Mercy Falls, LLC to be the alter ego of Defendant
5. For an award of reasonable attorneys' fees and costs of suit incurred herein;

For such other relief the Court deems just and proper.

DATED this 22nd day of November, 2024.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

*/s/ J Christopher Jorgensen*
J Christopher Jorgensen, Esq.
Nevada Bar No. 5382
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
Tel: (702) 949-8200
Fax: (702) 949-8398
cjorgensen@lewisroca.com

*Attorneys for Plaintiff*

LEWIS ROCA
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5, I hereby certify that service of the foregoing was made through the United States District Court's CM/ECF system electronic mail.

DATED this 22nd day of November, 2024.

*/s/ Annette Jaramillo*
An employee of
Lewis Roca Rothgerber Christie LLP